**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————————

**REBECCA DONNER,**

                         **Plaintiff,**                    **No. 23-cv-8196 (JGK)**

          **- against -**                    **OPINION AND ORDER**

**DER SPIEGEL GMBH & CO. KG, ET AL.,**

                         **Defendants.**
——————————————————————————

**JOHN G. KOELTL, District Judge:**

The plaintiff, Rebecca Donner ("Donner"), brings this action against DER SPIEGEL Gmbh & Co. KG and SPIEGEL-Verlag Rudolf Augstein Gmbh & Co. KG (collectively, "the defendants" or "Der Spiegel") for defamation arising from the defendants' publication of allegedly false and defamatory statements in an article published in the print and digital editions of the German-language magazine, Der Spiegel. See Am. Compl., ECF No. 19 ¶¶ 87-94; ¶¶ 95-103. The plaintiff seeks an injunction requiring the defendants to remove the article from the Der Spiegel website as well as from the paid online SPIEGEL+ service available to subscribers in the United States. The plaintiff also seeks punitive damages and pre- and post-judgment interest.

The defendants now move to dismiss all claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). In the alternative,

the defendants move to dismiss the case on the basis of forum non conveniens.

In opposition to the defendants' motion, the plaintiff has filed a cross-motion to transfer venue to the United States District Court for the District of Arizona or the United States District Court for the Central District of California. <u>See</u> Mot. to Transfer Case in the Alt., ECF No. 27.[1]

**I.**

Unless otherwise stated, the following facts are accepted as true for the purpose of these motions.

**A.**

The plaintiff is a citizen of the United States and of the State of New York. Am. Compl. ¶ 18. The plaintiff is the author of <u>All the Frequent Troubles of Our Days</u>, a 2021 biography of the plaintiff's great-great-aunt, Mildred Harnack, who the plaintiff claims moved to Germany, when Ms. Harnack was an American graduate student, to join the resistance against Hitler. <u>Id.</u> ¶¶ 1, 2, 11.

---

[1] On August 5, 2024, the Court heard oral argument on the defendants' motion to dismiss. Following argument, the Court ordered supplemental briefing addressing what prejudice, if any, would be caused by the failure to transfer this case to another District, and how the Court would determine whether to transfer the case to the District of Arizona or the Central District of California. <u>See</u> Order, ECF No. 42. The parties submitted briefing following argument, and this Opinion and Order addresses those issues.

On September 15, 2022, the German publisher Kanon Verlag published the first foreign language edition of the plaintiff's book, entitled <u>Mildred: The Story of Mildred Harnack and her Passionate Resistance Against Hitler</u>. <u>Id.</u> ¶ 3. The plaintiff's claims arise out of the publication of a German-language article about the plaintiff's book that was published in <u>Der Spiegel</u>'s print edition, <u>see</u> <u>id.</u> ¶¶ 87–94, and on <u>Der Spiegel</u>'s online platform, <u>see</u> <u>id.</u> ¶¶ 95–103.

The plaintiff alleges that Arizona-based journalist Jasmin Loerchner first contacted the plaintiff on behalf of <u>Der Spiegel</u> under the pretense that the magazine was planning to publish the first "profile" of the plaintiff in Germany. <u>Id.</u> ¶ 41. Loerchner initially proposed conducting an interview of the plaintiff in New York, but after the plaintiff clarified that she was living in California and would soon be visiting Berlin, Loerchner introduced the plaintiff to another <u>Der Spiegel</u> reporter in Germany. <u>Id.</u> ¶¶ 43-46. Martin Pfaffenzeller, a <u>Der Spiegel</u> reporter living in Germany, interviewed the plaintiff in Berlin on August 29, 2022. <u>Id.</u> ¶ 46; Donner Decl., ECF No. 29 ¶ 9.

Loerchner and Pfaffenzeller co-authored Der Spiegel's article about the plaintiff's book. Am. Compl. ¶ 47. Loerchner was residing in Arizona when Loerchner worked on the article. Loerchner Decl., ECF No. 24 ¶ 13. Pfaffenzeller, and the other <u>Der Spiegel</u> editors and staff who assisted in drafting or

editing the article, were located in Germany when they worked on the article. Id. The print edition and the online version of the article were both published in September 2022. Donner Decl. ¶ 13; Loerchner Decl. ¶ 1; Sieb Decl., ECF No. 23 ¶¶ 1, 18.[2] The print edition of the article was entitled "Pure Fantasy" and the online publication of the article was entitled "How Much Poetry Is There in a Historical Nonfiction Book." Am. Compl. ¶ 47.

The plaintiff alleges that the article accused the plaintiff of "being a fabulist." See id. ¶ 4. Specifically, the plaintiff alleges that the article characterized the plaintiff's book as "false," "pure fantasy," and "speculation," and claimed that the plaintiff admitted to relying on unreliable sources. Id. ¶ 48. The plaintiff contends that she never made any such admission. Id.

Ultimately, Der Spiegel agreed to remove the allegedly false quotation from the online edition of the article but did not publish a correction or retraction in its print edition. Id. ¶ 75. Despite the plaintiff's requests, Der Spiegel refused to remove any other allegedly defamatory statements from the online article. Id.

---

[2] The Donner Declaration asserts that the online publication of the article appeared on September 15, 2022 and the print edition was published on September 17, 2022. See Donner Decl. ¶ 13. The Loerchner Declaration asserts that the print edition was published on September 16, 2022 and the online edition was published on September 18, 2022. See Loerchner Decl. ¶ 1. The Sieb Declaration also states that the print edition was published on September 16, 2022. See Sieb Decl. ¶ 1.

On September 18, 2023, Donner filed a complaint against the defendants in this Court. Compl., ECF No. 4. Thereafter, on January 5, 2024, Donner filed an amended complaint. In the amended complaint, the plaintiff alleged two causes of action against the defendants, namely: (1) a claim for defamation against SPIEGEL-Verlag Rudolf Augstein Gmbh & Co. KG for printing allegedly false statements in the print edition of the article, see Am. Compl. ¶¶ 87-94; and (2) a claim for defamation against DER SPIEGEL Gmbh & Co. KG for printing allegedly false statements in the online edition of the article, see id. ¶¶ 95-103. The plaintiff claimed that the defendants willfully, and at a minimum recklessly, harmed her reputation and livelihood. Id. ¶¶ 90, 98. The plaintiff asserted that because foreign publishers are more likely to read foreign news sources, Der Spiegel's article hinders her ability to negotiate contracts for foreign-language editions of both her current book and future projects. Id. ¶ 85.

**B.**

The defendants argue that there is no personal jurisdiction over the defendants in New York.

The defendants are organized under German law with a principal place of business in Hamburg, Germany. Id. ¶ 19. DER SPIEGEL Gmbh & Co. KG has primary responsibility for the magazine's online edition and SPIEGEL-Verlag Rudolf Augstein

Gmbh & Co. KG has primary responsibility for the magazine's print edition. Id. To market and manage subscriptions of Der Spiegel within the United States, the defendants contract with IPS Pressevertrieb ("IPS"), a third-party German service provider that partners with Data Media, Inc. ("Data Media"), a company located in Buffalo, New York. Sieb Decl. ¶¶ 8-9. The United States Postal Service requires the maintenance of a "Known Office of Publication" to authorize mailing privileges for periodicals. Id. ¶ 10. Data Media operates as the "Known Office of Publication" for Der Spiegel. Id. ¶ 11. Der Spiegel has neither a direct contract nor a contractual relationship with Data Media regarding Data Media's role as Der Spiegel's "Known Office of Publication." Id.

There are six newsstands that sell Der Spiegel in New York. Id. ¶ 16. In 2022, these newsstands sold seventeen copies of the magazine issue containing the allegedly defamatory article. Id. ¶¶ 13-16. Additionally, Der Spiegel identified seventy subscribers to the print edition who were located in New York at the relevant time. Id. ¶ 13.

Der Spiegel articles are also accessible online via a paid subscription to the interactive website, SPIEGEL+. Am. Compl. ¶ 29. The online version of the allegedly defamatory article was available behind a paywall on Der Spiegel's website, and only accessible to subscribers who had purchased a SPIEGEL+ online

subscription. Id. ¶ 30. Readers who subscribe to SPIEGEL+ are invited to select the country from which they will be using the online subscription, including the United States. See id. ¶ 29. After selecting the United States, subscribers can then enter payment details to access SPIEGEL+. Id. The defendants assert that they do not have "reliable information regarding the location of the digital subscribers or the subscribers to SPIEGEL+." Sieb Decl. ¶ 13. As of October 16, 2023, there were only 112 page views of and sixty-eight page visits to the allegedly defamatory article from New York. See id. ¶ 20.

Der Spiegel also has an office located at 516 5th Avenue New York, New York. See Am. Compl. ¶ 27. The defendants claim that the defendants decided to close the New York office in November 2020 but have not yet terminated the lease. Sieb Decl. ¶ 24. The last office assistant left the New York office in June 2021. Id.

## II.

On February 2, 2024, the defendants moved to dismiss the plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) and, in the alternative, based on forum non conveniens. Defs.' Mot. to Dismiss, ECF No. 21. On March 1, 2024, the plaintiff moved to transfer the case to a federal court in the District of Arizona or the Central District

of California as an alternative to the defendants' motion to
dismiss. Mot. to Transfer Case in the Alt.

**A.**

On a motion to dismiss for lack of personal jurisdiction,
"the plaintiff bears the burden of showing that the court has
jurisdiction over the defendant." Mende v. Milestone Tech.,
Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting Kernan
v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999)).[3] To
survive a motion to dismiss where no evidentiary hearing is
held, the plaintiff need only make a prima facie case that the
defendant is subject to the Court's personal jurisdiction. See
In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d
Cir. 2003) ("Prior to discovery, a plaintiff may defeat a motion
to dismiss based on legally sufficient allegations of
jurisdiction.").

"In determining whether a plaintiff has met this burden,
[the Court] will not draw argumentative inferences in the
plaintiff's favor" but will "construe jurisdictional allegations
liberally and take as true uncontroverted factual
allegations." Robinson v. Overseas Military Sales Corp., 21 F.3d
502, 507 (2d Cir. 1994); see also Mende, 269 F. Supp. 2d at 251.
Nevertheless, "although pleadings and affidavits are construed

---

[3] Unless otherwise noted, this Opinion & Order omits all alterations,
citations, footnotes, and internal quotation marks in quoted text.

in the light most favorable to the plaintiff, 'conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction.'" DeLorenzo v. Ricketts & Assocs., Ltd., No. 15-CV-2506, 2017 WL 4277177, at *5 (S.D.N.Y. Sept. 25, 2017) (quoting Bracken v. MH Pillars Inc., No. 15-CV-7302, 2016 WL 7496735, at *2 (S.D.N.Y. Dec. 29, 2016)).

To determine whether jurisdiction exists over a non-domiciliary, the Court must determine whether New York law allows the exercise of personal jurisdiction and, if so, whether doing so comports with constitutional due process guarantees. See Edwardo v. Roman Catholic Bishop of Providence, 66 F.4th 69, 73 (2d. Cir. 2023); Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d. Cir. 2013). If New York law does not permit the Court to exercise personal jurisdiction over the non-domiciliary defendants, then the Court need not determine whether jurisdiction would be permissible under the United States Constitution. See Licci, 673 F.3d at 60–61; Penguin Grp. (USA) Inc. v. Buddha, 609 F.3d 30, 35 (2d Cir. 2010).

**B.**

The plaintiff claims that this Court has long-arm jurisdiction over the defendants under New York Civil Practice Law & Rules ("CPLR") §§ 302(a)(1) and 302(a)(4). Am. Compl. ¶

21. The plaintiff also claims that exercising jurisdiction would be consistent with constitutional due process. See Plaintiff's Opposition ("Pltf's Opp."), ECF No. 28 at 14.

We begin our personal jurisdiction analysis with the 2007 decision by the Second Circuit Court of Appeals in Best Van Lines, Inc. v. Walker. 490 F.3d 239 (2d Cir. 2007). In Best Van Lines, the court addressed the scope of CPLR § 302(a) in the context of a defamation lawsuit. See id. In that case, the plaintiff—a New York-based moving company—asserted that the defendant—an Iowa-based proprietor of a not-for-profit internet website—had posted defamatory statements about the moving company on the defendant's website. See id. at 240. The question in Best Van Lines was whether the United States District Court for the Southern District of New York had personal jurisdiction pursuant to CPLR § 302(a)(1) over the defendant for the purposes of the plaintiff's defamation lawsuit.

In Best Van Lines, the Court of Appeals for the Second Circuit held that the defendant's defamatory statements—that were made "outside of New York about New York residents"—did not "without more, provide a basis for jurisdiction, even when those statements [were] published in media accessible to New York readers." Id. at 253. In reaching this conclusion, the court analyzed the relationship between New York's long-arm statute and the constitutional limits on personal jurisdiction, see id.

10

at 242; and the reach of New York's long-arm statute, <u>see id.</u> at 243–44. The court then summarized the test developed by New York courts to determine in what circumstances personal jurisdiction over an out-of-state defendant is proper. <u>See id.</u> at 246–52.

First, the court focused on the text of New York's long-arm statute, CPLR § 302(a), which provides for specific jurisdiction that may arise from a foreign defendant's contacts with the state in connection with the cause of action. <u>See</u> CPLR § 302(a). In contrast to states that permit courts to exercise personal jurisdiction to the full extent allowed by the federal Constitution, the court clarified that the "reach of New York's long-arm statute . . . does not coincide with the limits of the Due Process Clause." <u>Best Van Lines</u>, 490 F.3d at 244.

Sections 302(a)(2) and (3) of the CPLR permit jurisdiction over tortious acts committed in New York and those committed outside of New York that cause injuries in the state. <u>See</u> CPLR §§ 302(a)(2),(3). Both subsections explicitly exempt causes of action for the tort of defamation, thereby creating a "gap" between the jurisdiction conferred by the statute and the jurisdiction permissible under the United States Constitution. <u>See</u> <u>Best Van Lines</u>, 490 F.3d at 245.

Even though CPLR §§ 302(a)(2) and (3) exclude defamation, a plaintiff can still acquire jurisdiction under section 302(a)(1). <u>Id.</u> at 245–46 (citing <u>Legros v. Irving</u>, 327 N.Y.S.2d

11

371, 373 (1st Dep't 1971)). "[C]onsistent with the cardinal rule of statutory construction that a statute is to be read as a whole," the court explained that CPLR § 302(a)(1) "factors into the analysis the defamation exemptions contained in sections 302(a)(2) and (3)." Id. at 248 n.11. Accordingly, "[s]ome distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute." Id. at 248.

Focusing on CPLR § 302(a)(1), the Second Circuit Court of Appeals explained that this subsection authorizes a court to exercise personal jurisdiction over any non-domiciliary defendant where the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." See id. at 244 (quoting CPLR § 302(a)(1)). Accordingly, under New York law, to assert long-arm jurisdiction under CPLR § 302(a)(1), the non-domiciliary defendant must "transact business" within the state and the claim against the foreign defendant must "arise out of" the defendant's activities within New York. Id., 490 F.3d at 246.

In a defamation action such as this, Best Van Lines teaches that "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in context of other sorts of litigation." 490 F.3d at 248. Indeed, "when the defamatory publication itself constitutes the alleged

transaction of business for the purposes of section 302(a)(1),
more than the distribution of a libelous statement must be made
within the state to establish long-arm jurisdiction over the
person distributing it." Id.

Applying these principles to the specific allegations in
Best Van Lines, the court considered whether the defendant's
internet postings about the New York moving company were "the
kind of activity by which the defendant purposefully availed
himself of the privilege of conducting activities within the
forum state, thus invoking the benefits and protections of its
laws." Id. at 253.

Addressing the first prong of the test—whether the alleged
conduct could be considered the "transaction of business" under
CPLR § 302(a)(1)—the court distinguished the defendant's conduct
from defamation cases in which New York courts have exercised
personal jurisdiction. Id. at 248-49. The court noted that "New
York courts have found jurisdiction in cases where the
defendants' out-of-state conduct involved defamatory statements
projected into New York and targeting New Yorkers, but only
where the conduct also included something more." Id. at 249
(distinguishing a decision by the N.Y. Supreme Court, Appellate
Division, in which the Fourth Department concluded that one
allegedly defamatory letter sent by the defendants could provide
a basis for jurisdiction where the defendants had "drafted the

13

letter" and demonstrated "active involvement and personal
control [in New York]" over the writing and distribution of the
allegedly defamatory statement(quoting Sovik v. Healing Network,
665 N.Y.S.2d 997, 999 (4th Dep't 1997))). The court then
reasoned that mere distribution, by contrast, does not amount to
a transaction of business within the state under Section
302(a)(1). See id. (collecting decisions by New York courts in
which the act of sending allegedly defamatory letters, or the
distribution of an allegedly libelous broadcast, did not
establish personal jurisdiction).

The Best Van Lines court therefore concluded that the
defendant's "allegedly defamatory statements posted on a website
accessible to readers in New York" did not, "without more,
provide[] a basis for jurisdiction, even when those statements
[were] published in media accessible to New York readers." Id.
at 253. Furthermore, because "the nature of [the defendant's]
comments d[id] not suggest that they were purposefully directed
to New Yorkers rather than a nationwide audience," the court
reasoned that the defendant did not "purposefully avail[]
himself of the privilege of conducting activities within New
York." Id. The court therefore held that the plaintiff had
failed to make out a prima facie case of personal jurisdiction
under New York law because the defendant's website postings did

14

not constitute "transacting business under section 302(a)(1)."
Id. at 254.

Finally, having found that personal jurisdiction could not
be exercised under New York's long-arm statute, the court
declined to analyze whether personal jurisdiction was proper
under the Due Process Clause of the Fourteenth Amendment. Id. at
255.

**i.**

Based on Best Van Lines and its progeny, there is no
specific personal jurisdiction under CPLR § 302(a)(1) based on
the allegedly defamatory article in this case.

**a.**

With respect to the written article, only seventeen copies
of the issue were sold at newsstands in New York, compared to
128,857 total copies sold worldwide. Sieb Decl. ¶ 16. There is
no allegation that Data Media—the third-party company in Buffalo
that was responsible for distributing the article—was involved,
in any way, with writing or editing the article. Indeed, there
are no allegations that any activities in connection with
writing or editing the article occurred in New York.

The publication of a written article that is simply
circulated in New York is insufficient to establish that the
defendants "transacted business" that was "purposefully

15

directed" at New York. See Satanic Temple, Inc. v. Newsweek Mag. LLC, 661 F. Supp. 3d 159, 167 (S.D.N.Y. 2023). The "mere fact that the allegedly defamatory postings may be viewed in New York . . . is insufficient to sustain a finding of jurisdiction." Knight-McConnell v. Cummins, No. 03 Civ. 5035, 2005 WL 1398590, at *3 (S.D.N.Y. Jun. 13, 2005) (quoting Best Van Lines, Inc. v. Walker, No. 03 Civ. 6585, 2004 WL 964009, at *5 (S.D.N.Y. May 5, 2004)).

As Best Van Lines teaches, New York courts may exercise personal jurisdiction when the defendant, through out-of-state conduct, projects defamatory statements into New York, "but only where the conduct also include[s] something more." Goldfarb v. Channel One Russia, 442 F. Supp. 3d 649, 662 (S.D.N.Y. 2020) (quoting Best Van Lines, 490 F.3d at 249). "The 'something more' standard is satisfied when at least part of the defamatory content was created, researched, written, developed, or produced in New York." Prince v. Intercept, 634 F. Supp. 3d 114, 129 (S.D.N.Y. 2022); see also 79th Grp., Inc. v. Moore, No. 1:23-cv-2521, 2024 WL 36992, at *7 (S.D.N.Y. Jan. 3, 2024) (quoting Best Van Lines, 490 F.3d at 249).

This conclusion is also consistent with the analysis in Tannerite Sports, LLC v. NBCUniversal Media, LLC. See 135 F. Supp. 3d 219, 234 (S.D.N.Y. 2015), aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 23 (2d Cir.

2017). In that case, the district court declined to exercise personal jurisdiction under CPLR § 302(a)(1) over a television station and news company when that company did not intentionally broadcast a story for New York viewers, and when an internet article posted by the company was read by thirteen users in New York. See id. In Tannerite, as in this case, the plaintiff failed to demonstrate that the mere availability of the defamatory statements in New York was sufficient to satisfy the "transacts any business" prong of CPLR § 302(a)(1), or that defendants purposefully directed their alleged defamatory statements at New York. See id. at 230–31, 234.

Donner attempts to distinguish Tannerite by alleging that the Der Spiegel defendants purposefully transacted business in New York because they used Data Media to distribute the magazine throughout the United States. See Pltf's Opp. at 9. Donner asserts that because the defendants contract with the German company, IPS—which in turn partners with Data Media to market and manage Der Spiegel's subscriptions in the United States—the defendants engaged in the purposeful transaction of business in New York. Am. Compl. ¶ 25; Pltf's Opp. at 3–4, 8–9.

The plaintiff's argument is without merit. Data Media's distribution of allegedly defamatory material is, without more, insufficient to establish that the defendants purposefully transacted business under New York's long-arm statute. See,

17

e.g., Best Van Lines, 490 F.3d at 249 (citing Kim v. Dvorak, 658 N.Y.S.2d 502 (3d Dep't 1997); Streslin v. Barrett, 320 N.Y.S.2d 885 (1st Dep't 1971)). The distribution of the article is the substance of the defamation and CPLR § 302, with its defamation exceptions in §§ 302(a)(2) and (3), is drafted to preclude personal jurisdiction over the mere distribution of defamatory material in New York. Instead, there must be some connection to the actual writing or editing of the article which underlies the cause of action, not simply an allegation that the article was distributed. See, e.g., Morsy v. Pal-Tech, Inc., No. 07 Civ. 2143, 2008 WL 3200165, at *4-5 (S.D.N.Y. Aug. 7, 2008).

Moreover, Donner has failed to show that the alleged defamation otherwise "arises from" the defendants' business transactions in New York. While the defendants acknowledge that they have an empty office in New York that has been empty since June 2021, see Sieb Decl. ¶ 24, there is no allegation that the alleged defamation "arises from" the activities of that space. Indeed, the defendants' primary news bureau in the United States is in Washington, D.C., not New York. Id. ¶ 23. Moreover, Donner has not alleged that any employees in Manhattan—or in Buffalo— were involved in the creation of the article. The alleged facts show mere distribution, and the mere distribution of alleged defamation is insufficient to establish that personal

jurisdiction is proper in this case. <u>See</u> <u>Best Van Lines</u>, 490
F.3d at 253–55; <u>Tannerite Sports</u>, 135 F. Supp. 3d at 234.

**b.**

With regard to the online publication of the article, the
plaintiff claims that the defendants' use of an interactive
website to sell their online SPIEGEL+ service constitutes a
purposeful transaction of business in New York. <u>See</u> Am. Compl. ¶
29; Pltf's Opp. at 11–12. The plaintiff alleges that the
SPIEGEL+ website is interactive because it requests that online
subscribers first disclose the country from which they will be
using the online subscription, Am. Compl. ¶ 29, and because the
subscriber is then invited to enter payment details in order to
gain access to the subscription, <u>id.</u> ¶¶ 29–30.

The plaintiff's argument is unpersuasive. As discussed
above, "the posting of defamatory material on a website
accessible in New York does not, without more, constitute
'transacting business' in New York for the purposes of New
York's long-arm statute." <u>Best Van Lines</u>, 490 F.3d at 250;
<u>Realuyo v. Villa Abrille</u>, No. 01 Civ. 10158, 2003 WL 21537754,
at *6–7 (S.D.N.Y. July 8, 2003). Moreover, the Second Circuit
Court of Appeals has cautioned that a website's interactivity
may be useful for analyzing personal jurisdiction under CPLR §
302(a)(1), "but only insofar as it helps to decide whether the
defendant . . . purposefully availed himself of the privilege of

19

conducting activities within New York, thus invoking the benefits and protections of its laws." Best Van Lines, 490 F.3d at 252. "[T]raditional statutory and constitutional principles remain the touchstone of the inquiry." Id.

In Best Van Lines, the Court of Appeals found that the operation of an interactive web site that was accessible in New York and that solicited contributions was insufficient to satisfy the requirement of § 302(a)(1). Id. at 251–52. Operating such a website did not mean that the defendant "transact[ed] business" in New York for purposes of a defamation claim arising from content posted on that interactive web site. Id.

In this case, there is no showing that the Der Spiegel defendants "purposefully availed" themselves of business transactions in New York through the online publication of the article. As of October 16, 2023, there were only 112 page views and sixty-eight page visits of the online article from within New York. See Sieb Decl. ¶ 20. And, apart from identifying the "United States" as the country from which they will be using their subscription, online subscribers need not specify that they live in New York before accessing SPIEGEL+. See Am. Compl. ¶ 29. Nor is there any evidence that the defendants derived a significant part of their revenue from digital subscriptions in

New York.[4] Online activities such as these provide no basis for jurisdiction. See Knight-McConnell, 2005 WL 1398590, at *3 (declining to exercise jurisdiction over a defendant who intended for an online message to be read by "the entire worldwide internet audience," that was not "directed at any specific forum").

The defendants are therefore correct that simply publishing an article containing allegedly "defamatory utterances" that is circulated on the internet in New York is not sufficient on its own to qualify as "transacting business" under CPLR § 302(a)(1). See Best Van Lines, 490 F.3d at 248-49; see also Trachtenberg v. Failedmessiah.com, 43 F. Supp. 3d 198, 204-05 (E.D.N.Y. 2014) (concluding that a "merely coincidental" relationship between an online article accessed in New York and the cause of action "does not suffice to confer jurisdiction" and collecting cases); SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n, 963 N.E.2d 1226, 1229 (N.Y. 2012) (finding that allegedly defamatory statements published by an out-of-state defendant on a website that were "equally accessible" in New York as in "any other

---

[4] The defendants assert that they lack reliable information regarding the location of the digital subscribers or the subscribers to the SPIEGEL+ platform. See Sieb Decl. ¶ 13. But, as of October 16, 2023, there were only 112 page views and sixty-eight page visits of the article from New York. Id. ¶ 20. This represents a miniscule percentage of Der Spiegel's total global presence: The website attracts approximately 35 million users per month, generating 530 million page views and 190 million site visits. See id. ¶¶ 20-21.

jurisdiction," and that were not "written in or directed to New York," were insufficient to establish personal jurisdiction). Moreover, the mere act of making an online article available for SPEIGEL+ subscribers to read is insufficient for personal jurisdiction. Best Van Lines, 490 F.3d at 253.[5] The plaintiff has therefore failed to make a threshold showing of jurisdiction under Section 302(a)(1).

**ii.**

The plaintiff also asserts that personal jurisdiction can be based on CPLR § 302(a)(4), which authorizes personal jurisdiction over a non-domiciliary in New York who "owns, uses, or possesses any real property situated within the state." The cause of action must arise from those activities and there is no exception for torts based on defamation. The plaintiff in this case argues that jurisdiction is proper under § 302(a)(4) because the defendants used their "agent," Data Media, to distribute copies of the magazine containing the article through their "Known Office of Publication" in Buffalo, New York. See Am. Compl. ¶ 21; Pltf's Opp. at 13.

---

[5] This case is unlike the other cases where the interactive website allowed more interactive conduct in New York. See, e.g., Capitol Recs., Inc., v. MP3tunes, LLC, No. 07 Civ. 9931, 2008 WL 4450259, at *4 (S.D.N.Y. Sept. 29, 2008)(finding that an online music distributor engaged in business transactions sufficient to sustain the court's exercise of personal jurisdiction because the website—which permitted users to download music, send messages, and store music files—did "more than just make information available to users.").

22

However, the defendants in this case do not own real
property in Buffalo; rather, Data Media—a separate company—
operates a "Known Office of Publication" in Buffalo, which
allows Data Media to manage a small number of Der Spiegel
subscriptions. See Sieb Decl. ¶ 11.

Moreover, to assert personal jurisdiction under §
302(a)(4), "it is not enough for the property to be related in
some way to the parties' dispute; the plaintiff's cause of
action must arise out of the fact of ownership, use or
possession of New York realty." Elsevier, Inc. v. Grossman, 77
F. Supp. 3d 331, 346 (S.D.N.Y. 2015). In this case, the
plaintiff's defamation claim arises out of the publication of an
allegedly defamatory article, not the use or ownership of an
office building or "Known Office of Publication." The plaintiff
points to no comparable case where the use of a distribution
site for an allegedly defamatory publication was sufficient for
jurisdiction under CPLR § 302(a)(4). To find personal
jurisdiction under CPLR § 302(a)(4) for the mere use of property
to distribute an allegedly defamatory publication would be
inconsistent with the exception for defamation torts under CPLR
§ 302(a)(2) and the analysis in Best Van Lines. Therefore, the
plaintiff's § 302(a)(4) argument is without merit.

**iii.**

The defendants also assert that this Court cannot exercise personal jurisdiction over the defendants consistent with constitutional due process. But, because the plaintiff has failed to demonstrate any statutory basis for personal jurisdiction over the defendants, the Court need not determine whether exercising personal jurisdiction would violate constitutional due process. Best Van Lines, 490 F.3d at 242 (stating that courts need to consider constitutional due process "[i]f, but only if" personal jurisdiction is statutorily permissible).

**iv.**

Finally, because the plaintiff has failed to make out a prima facie case for personal jurisdiction, the plaintiff is not entitled to jurisdictional discovery. See Best Van Lines, 490 F.3d at 255 (finding that the district court did not err in denying jurisdictional discovery where the plaintiff failed to make out a prima facie case for jurisdiction); 79th Grp., 2024 WL 36992, at *14; Tannerite Sports, 135 F. Supp. 3d at 231.

**C.**

The defendants also move to dismiss the action for improper venue pursuant to Rule 12(b)(3). See Fed. R. Civ. P. 12(b)(3). The plaintiff bears the burden of showing that venue is proper once an objection is raised. PI, Inc. v. Quality Products, Inc.,

907 F. Supp. 752, 757 (S.D.N.Y. 1995). However, because there is
no personal jurisdiction over the defendants in the Southern
District of New York, this Court need not reach the defendants'
motion to dismiss on the alternative ground of improper venue.
See Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd., 694 F.
Supp. 3d 374, 385 (S.D.N.Y. 2023) (declining to reach a motion
to dismiss for improper venue where the court had already found
that personal jurisdiction was lacking).[6]

**D.**

The plaintiff has filed a cross motion to transfer this
action to the District of Arizona (where Loerchner, the Der
Spiegel reporter, worked) or the Central District of California
(where some of Donner's activities authoring the article
allegedly occurred). See Mot. to Transfer Case in the Alt. The
plaintiff has filed this cross motion pursuant to 28 U.S.C. §
1404(a) and/or 28 U.S.C. § 1406(a). Id.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of
parties and witnesses, in the interest of justice, a district
court may transfer any civil action to any other district . . .
where it might have been brought." 28 U.S.C. § 1404(a); see
Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 399–

---

[6] It is also unnecessary to reach the defendants' alternative argument
that this action should be dismissed based on the doctrine of forum
non conveniens.

409 (S.D.N.Y. 2004). And, pursuant to 28 U.S.C. § 1406(a), the district court "in which is filed a case laying venue in the wrong . . . district" has discretion to dismiss or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 257 F. Supp. 2d 648, 649 (S.D.N.Y. 2003).[7]

"The relevant inquiry under either § 1404(a) or § 1406(a) is whether the 'interests of justice' militate in favor of transfer or dismissal." Pares v. Gordon, No. 91 Civ. 1344, 1992 WL 296437, at *2 (S.D.N.Y. Oct. 8, 1992). "This decision is within the court's discretion." Id. (citing Spar, Inc. v. Info. Res., Inc., 956 F.2d 392, 394 (2d Cir. 1992)).

In this case, the Court declines to exercise its discretion to transfer venue to the District of Arizona or to the Central District of California. This is not a case in which the statute of limitations would bar the plaintiff from filing the

---

[7] As a threshold matter, even though this Court lacks personal jurisdiction over these defendants, "[t]he language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not." Corke v. Sameiet M.S., 572 F.2d 77, 79 (2d Cir. 1978)(quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962)). And § 1406 can be used if venue is "wrong" in a district court because personal jurisdiction is lacking. Id. at 79–80. But, "the receiving court must be a proper venue and must possess personal jurisdiction over the defendants." Wohlback v. Ziady, No. 17 Civ. 5790, 2018 WL 3611928, at *3 (S.D.N.Y. Jul. 27, 2018).

plaintiff's claims in a proper forum. See, e.g., Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005) ("A 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum.").

With respect to the statute of limitations in Arizona and in California, the plaintiff argues that there is a "potential dispute over statute of limitations issues," see Pltf's Supp. Memo., ECF No. 45 at 9, but there is no showing that the case would be barred on timeliness grounds in Arizona, and the plaintiff contends that her lawsuit against the defendants would not be barred in California based on equitable tolling. See id. at 9-10.[8] On the other hand, the defendants would contest personal jurisdiction in either Arizona or California, and even if the Court determined that personal jurisdiction was proper in either Arizona or California, that decision is far from clear.

---

[8] The plaintiff filed this action on September 15, 2023. See ECF No. 1. Both Arizona and California have one-year statutes of limitations for claims of libel and slander. See Ariz. Rev. Stat. § 12-541(1); Cal. Civ. Proc. Code § 340(c). Arizona has a savings statute that would allow Donner six months to file a new action after termination of this action. See Ariz. Rev. Stat. § 12-504. By contrast, California's savings statute applies when a judgment has been reversed, see Cal. Civ. Proc. Code § 355, but equitable tolling permits the judge to take account of several factors, including: "(1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Hatfield v. Halifax PLC, 564 F.3d 1177, 1185 (9th Cir. 2009).

An incorrect decision could transfer this litigation to an improper forum and risk the ability of the plaintiff to file the lawsuit on a timely basis in a proper forum.[9]

Moreover, the plaintiff can indisputably file this case in Germany, which has far greater contacts with the parties and issues than any forum suggested by the plaintiff. Neither party disputes that Germany would be a proper forum. See Pltf's Opp. at 25; Defs.' Memo. in Support, ECF No. 22 at 25-26. At the hearing on the defendants' motion to dismiss, the defendants asserted that "[t]here's no dispute that Germany is an adequate alternative forum. There's no dispute that the vast majority of the events related to the article, including plaintiff's interview, occurred in Germany, and that most of the witnesses are in Germany, including the German resistance expert who provided most of the challenged statements at issue in this

_____

[9] The cases that the plaintiff relies on do not support transfer in this case. See Pltf's Supp. Memo. at 7-9. Rather, these are cases in which the defendants either consented to jurisdiction, see Alpi USA, Inc. v. D & F Fashion Int'l Gemelli, No. 06 Civ. 2091, 2007 WL 942096, at *4 (S.D.N.Y. Mar. 29, 2007), or in which personal jurisdiction over the defendants in the transferee forum was clear, see Birittieri v. Whole Foods Mkt. Grp., Inc., No. 21-cv-8703, 2023 WL 2266481, at *6 (S.D.N.Y. Feb. 28, 2023); Paroni v. Gen. Elec. UK Holdings Ltd., No. 19 Civ. 1034, 2021 WL 5154111, at *2 (S.D.N.Y. Nov. 5, 2021). This is not such a case. Instead, transferring the action would "undermine the goals of the transfer statutes." See In re Ski Train Fire, 257 F. Supp. 2d at 651 (dismissing the case, rather than transferring the venue, because the decision to transfer the action to a jurisdiction which may ultimately be found to lack personal jurisdiction "would be grossly inefficient and would undermine the goals of the transfer statutes, which are to permit transfer only to a district in which the action could have been brought.").

case, who would not be subject to regular subpoena power here."
Hearing Tr., ECF No. 43 at 15. Furthermore, there is a three-
year statute of limitations in Germany, and there is no
procedural bar to bringing the suit in Germany. Id. at 15-16.
The plaintiff agreed that the case "could have been brought and
could be brought in Germany." Id. at 29.

There is therefore no showing that this is a case where
dismissal, rather than transfer, would cause the plaintiff to
suffer the loss of her claims. See Goldlawr, 369 U.S. at 466. It
is not in the interest of justice to transfer this case to the
District of Arizona or the Central District of California. See
Satanic Temple, 661 F. Supp. 3d at 168 (declining to transfer
venue after concluding that the district court lacked
jurisdiction over the defendants in a defamation case).

CONCLUSION

The Court has considered all of the arguments of the parties in this case. To the extent that they are not discussed above, those arguments are either moot or without merit. For the reasons stated above, the defendants' motion to dismiss for lack of personal jurisdiction is **granted**. The plaintiff's motion to transfer venue is **denied**.

The Clerk is directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           September 4, 2024

                                    _____
                                          John G. Koeltl
                                    United States District Judge

30